*P/SEND*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-1637-GHK (RZx) | Date | February 7, 2013 |
|----------|----------------------|------|------------------|
| Title | *Securities and Exchange Commission v. Todd M. Ficeto, et al.* | | |

| Presiding: The Honorable | GEORGE H. KING, CHIEF U. S. DISTRICT JUDGE | |
|--------------------------|--------------------------------------------|--|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|-----------------------------------|-----------------------------------|
| None | None |

**Proceedings:**     **(In Chambers) Order re:** Defendant Homm's Motion to Dismiss [Dkt. No. 83]; Motion to Stay Discovery [Dkt. No. 75]

This matter is before us on Defendant Florian Homm's ("Homm") Motion to Dismiss. We have considered the papers filed in support of and in opposition to this Motion, and deem this matter appropriate for resolution without oral argument. L.R. 7-15. As the Parties are familiar with the facts and the allegations in the FAC, which we set forth in our December 20, 2011 Order on Defendants Todd M. Ficeto, Hunter World Markets, Inc., and Hunter Advisors, LLC's Motion to Dismiss ("December 20 Order"), we repeat the facts only as necessary. Accordingly, we rule as follows.

## I.     Motion to Dismiss Legal Standards

### A.     Failure to State a Claim

To survive a motion to dismiss for failure to state a claim, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain factual allegations sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Although we must accept the allegations of the Complaint as true and construe them in the light most favorable to Plaintiff in resolving this Motion, we need not accept as true legal conclusions "cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

### B.     Personal Jurisdiction

To withstand a motion to dismiss for lack of personal jurisdiction, plaintiff is "charged with making a prima facie showing of facts that might establish personal jurisdiction by a preponderance of the evidence." *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002). In adjudicating a personal jurisdiction motion, "[we] must accept as true the uncontroverted allegations in the complaint." *Dole Food Co. Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). But "we may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977). Rather, when allegations are contradicted, plaintiff bears the burden to "demonstrate facts that if true would support jurisdiction over

*P/SEND*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1637-GHK (RZx) | Date | February 7, 2013 |
|----------|----------------------|------|------------------|
| Title | *Securities and Exchange Commission v. Todd M. Ficeto, et al.* | | |

the defendant." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001). We must resolve any factual disputes in Plaintiff's favor. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

## II.    Discussion

Homm moves to dismiss on three grounds: (1) American securities laws do not apply to his conduct under *Morrison v. National Australia Bank Ltd.*, 130 S.Ct. 2869 (2010);[1] (2) we lack personal jurisdiction; and (3) the SEC has failed to adequately allege market manipulation under § 10 (b). We consider each purported basis for dismissal in turn below.

### A.    *Morrison* does not bar the application of the SEC's claims to the facts presented in this case

Homm argues that *Morrison v. National Australia Bank Ltd.*, 130 S.Ct. 2869 (2010), precludes the application of American securities laws because this case involves "foreign defendants involved in securities transactions between foreign persons located solely outside the U.S." (Mot. at 1). We rejected a nearly identical argument in our December 20 Order. (*See* December 20 Order at 9 ("[Defendants] argue that most of the alleged trades cannot be considered domestic transactions because they involve foreign buyers and foreign sellers.")). As we explained:

> [*Morrison*] adopted a "transactional" test, which focuses "not upon the place where deception originated, but upon purchases and sales of securities in the United States." [citation]. The Court held that § 10(b) applied only to "[1] securities listed on domestic exchanges, [2] and domestic transactions in other securities."

(December 20 Order at 9). We further explained that this action involves securities listed on domestic exchanges because "[t]he FAC alleges that Defendants engaged in manipulative techniques in purchasing and selling securities that were traded on the over-the-counter securities market: specifically, the OTCBB and Pink Sheets." (Id.) We conducted an extensive analysis, (id. at 10-25), and held that "*Morrison* does not bar the *territorial* application of § 10(b) to manipulative trading on the domestic over-the-counter market," which falls within the meaning of a "domestic exchange" under the first prong of *Morrison*. (Id. at 10). Likewise, we adopt this analysis in full here and conclude that *Morrison* does not bar the SEC's claims against Homm.

Homm argues that we should not rely on the reasoning of our December 20 Order in light of two subsequent cases, (1) *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60 (2d. Cir. 2012) ("*Absolute Activist II*"); and *Pope Investments II, LLC v. Deheng Law Firm*, 2012 U.S. Dist. Lexis 115282 (S.D.N.Y. 2012) ("*Pope Investments*"). These cases are readily distinguishable from the present

---

[1] Homm argues that we lack subject matter jurisdiction under *Morrison*, but the Supreme Court explained that whether § 10(b) applies to certain conduct is a "merits" question, not a jurisdictional question. *Morrison*, 130 S.Ct. at 2877.

*P/SEND*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1637-GHK (RZx) | Date | February 7, 2013 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Todd M. Ficeto, et al.* | | |

matter, however, as the courts in both cases explicitly recognized.  First, we considered the district court's decision in *Absolute Activist Value Master Fund Ltd. v. Homm*, 2010 WL 5415885 (S.D.N.Y. 2010) ("*Absolute Activist I*") before the Second Circuit issued an opinion in the appeal, *Absolute Activist II*.  As we explained in our December 20 Order:

> Although *Absolute Activist* involved the same hedge funds and several of the same Defendants in this case, the allegations here are very different.  *Absolute Activist* focused on investments made via private placements, of stocks never released to the general market, while the instant case focuses on the manipulative trading on the domestic over-the-counter securities market of stocks traded publicly in the United States.

(December 20 Order at 24 n.13.)  Further, the appellants in *Absolute Activist II* argued that "their complaint sufficiently plead[ed] the existence of domestic securities transactions within the second prong of *Morrison*." *Absolute Activist II*, 677 F.3d at 67 n.3.  They did not address whether their allegations satisfied the first prong of *Morrison*, i.e., transactions in securities listed on domestic exchanges.  *Id.*  Referring to our December 20 Order, the Second Circuit noted that "the SEC has successfully argued that the first prong of *Morrison* is satisfied because the case involves securities traded on the over-the-counter securities market, not securities sold on foreign exchanges."  *Id.* Presumably because the parties in *Absolute Activist II* did not address the first prong of *Morrison*, the Second Circuit took "no position on this issue."  *Id.*  Thus, by its own terms, *Absolute Activist II* did not decide the issue we decided in our December 20 Order – that the alleged over-the-counter transactions fall within the first prong of *Morrison* – and it is no help to Homm in seeking to undermine the reasoning of our prior Order.

*Pope Investments* is likewise distinguishable.  That case involved a transaction to acquire a Chinese company.  *Pope Investments*, 2012 U.S. Dist. Lexis 115282 at *4-5.  The court quoted the holding in our December 20 Order that "the Supreme Court did not purport to overturn the universally accepted principle that § 10 (b) applies with equal force to market manipulation on national exchanges and the domestic over-the-counter market."  *Id.* at *14.  The court noted, however, that the plaintiffs in *Pope Investments* did "not allege market manipulation, or that any transaction . . . took place on a domestic securities exchange or over-the-counter market."  *Id.*  The present matter, by contrast, involves alleged market manipulation of the domestic over-the-counter market, as discussed above and at length in our December 20 Order.  Accordingly, *Pope Investments* and *Absolute Activist II* do not undermine our December 20 Order, the reasoning of which we adopt in full here.

Homm also argues that we should focus on the transactions that are the "heart" of the SEC's claims to determine whether § 10(b) applies under *Morrison*.  (Mot. at 5).  According to Homm, to identify the "heart" of the SEC's claims, we must look to "purportedly ill-gotten gains that the SEC seeks to have disgorged."  (Id.)  Here, Homm continues, the SEC seeks to disgorge only gains from private foreign transactions.  Therefore, Homm concludes, § 10(b) cannot apply to him under *Morrison*. We disagree.  First, Homm cites no authority for this purported "heart of the claims" test or the proposition that the gains the SEC seeks to disgorge is the proper test to identify the heart of the claims.

*P/SEND*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 11-1637-GHK (RZx) | Date | February 7, 2013 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Todd M. Ficeto, et al.* | | |

Further, even if the law required us to identify the "heart" of the SEC's claims, we would be inclined to conclude that the alleged manipulation of American over-the-counter securities markets is the "heart" of the claims.[2]  Second, Homm's argument that § 10(b) cannot apply because the SEC seeks to disgorge gains from foreign transactions is a version of an argument we rejected in our December 20 Order. There, the moving Defendants argued that "most of the alleged trades cannot be considered domestic transactions because they involve foreign buyers and foreign sellers."  (*See* December 20 Order at 9). As discussed in detail above, we nonetheless concluded that *Morrison* did not bar the SEC's claims. Third, the SEC correctly points out that Homm's argument improperly "confuses the elements of a §10(b) market manipulation claim with the equitable remedy of disgorgement."  (Opp. at 6.) Accordingly, we decline to treat the SEC's disgorgement claims as "distinct."[3]

Finally, Homm argues that *Morrison* bars the SEC's claims against him under § 206(1) and § 206(2) of the Investment Advisers Act of 1940 ("IAA").[4]  At the outset, we note that the same alleged transactions and market manipulation scheme giving rise to the SEC's § 10(b) claims also give rise to the SEC's IAA claims.  Thus, even if we were to conclude that *Morrison*'s transactional test applied to IAA claims, we would conclude, as set forth above and in our December 20 Order, that the first prong of *Morrison* is satisfied.  Homm cites various authorities for the proposition that foreign advisers and

---

[2] We also note that Homm's assertion that the transactions for which the SEC seeks disgorgement are the only relevant transactions in an analysis under *Morrison* is plainly inconsistent with our December 20 Order.

[3] Further, were we to treat Homm's Motion as a motion to strike the SEC's request for disgorgement, we would be inclined to deny it.  The FAC adequately alleges facts supporting the requested relief, i.e., that Homm profited from the alleged market manipulation scheme, including stock sales, sales credits, commissions, and other fees.  (FAC ¶ 9, 25, 41, 43, 60, 61); *see also. S.E.C. v. Mozilo*, 2009 WL 3807124, *16 (C.D. Cal. 2009) (denying request to strike SEC's request for disgorgement remedy; explaining that "[a] district court has broad equity powers to order the disgorgement of 'ill-gotten gains' obtained through the violation of the securities laws" (citing *SEC v. First Pacific Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998)).

[4] Sections 206(1) and (2) provide as follows:

It shall be unlawful for any investment adviser, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly--

(1) to employ any device, scheme, or artifice to defraud any client or prospective client;

(2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client

15 U.S.C. § 80b-6.

*P/SEND*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1637-GHK (RZx) | Date | February 7, 2013 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Todd M. Ficeto, et al.* | | |

hedge fund advisers are exempt from the IAA's registration requirements. The argument appears to be that because the IAA's registration requirements do not reach him, the entire act does not reach him. But as the SEC correctly points out, IAA § 206 applies "to all investment advisers, whether or not such advisers were required to register under § 203 of the Act." *S.E.C. v. Gruss*, 859 F. Supp. 2d 653, 663 (S.D.N.Y. 2012) (quoting *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 17 (1979)). Thus, any exemption from IAA registration requirements is no basis to conclude that *Morrison* bars the SEC's IAA claims. The SEC has also adequately pled that Homm was an investment adviser within the meaning of the IAA.[5] Finally, Homm appears to make yet another argument that we rejected in our December 20 Order. There, the moving Defendants appeared to argue that the SEC failed to state IAA claims against them "because the Hunter Fund's only clients were three of the Absolute Funds, and the de facto controller of the Absolute Funds[6] – Homm – was actively involved in the alleged fraud. Because Homm cannot defraud himself, Ficeto and Hunter Advisors could not have violated the Advisers Act by defrauding a client who was aware of the fraud." (December 20 Order at 7). Here, Homm argues that "the SEC must plausibly allege that Defendants employed a 'device, scheme, or artifice to defraud' the fund itself, rather than the fund's investors." Although unclear, the argument appears to be that the SEC cannot so allege because Homm had de facto control of the Absolute Funds and therefore he could not defraud himself. In rejecting a substantially similar argument in our December 20 Order, we explained that

> Homm's alleged control of the Absolute Funds only highlights the duty Homm had to investors to invest with prudence; it does not insulate him or his alleged co-schemers from liability for their fraud, which allegedly resulted in significant losses to investors.

(December 20 Order at 7). This reasoning applies equally to Homm's Motion. *See also Goldstein v. S.E.C.*, 451 F.3d 873, 876 (D.C. Cir. 2006) (holding that "[n]on-exempt 'investment advisers' must register with the [SEC] . . . and all advisers are prohibited from engaging in fraudulent or deceptive practices" and that "[h]edge fund general partners meet the definition of 'investment adviser' in the [IAA]"). Accordingly, we reject Homm's arguments that the SEC's IAA claims have an impermissible extraterritorial application.

**B.     We have personal jurisdiction over Homm**

---

[5] Title 15 U.S.C. Section 80b-2 defines "investment adviser" as "any person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities." 15 U.S.C. § 80b-2. Here, the FAC alleges that Homm was an investment adviser to the Absolute Funds. (FAC ¶ 13). The FAC alleges that Homm had de facto control over the Absolute Funds and that he used his position as an investment adviser to advance the market manipulation scheme. (FAC ¶ 49).

[6] The Absolute Funds are eight hedge funds that were all domiciled in the Cayman Islands.

*P/SEND*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1637-GHK (RZx) | Date | February 7, 2013 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Todd M. Ficeto, et al.* | | |

### 1.    Specific jurisdiction[7]

"[T]he Securities Exchange Act permits the exercise of personal jurisdiction to the limit of the Due Process Clause of the Fifth Amendment." *S.E.C. v. Unifund SAL*, 910 F.2d 1028, 1033 (2d. Cir. 1990).  For claims under the Securities Exchange Act, personal jurisdiction lies in any district court "[s]o long as a defendant has minimum contacts with the United States." *Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985).  To establish specific jurisdiction consistent with the due process clause, three requirements must be met:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  Because this is a securities fraud case, minimum contacts may be established either by purposeful direction or purposeful availment.  *See In re LDK Solar Securities Litigation*, 2008 WL 4369987, *6 (N.D. Cal. 2008) (concluding in a securities case that the "conduct plaintiffs identify contains elements both of purposeful availment and purposeful direction"); *see also Lyddon v. Rocha-Albertsen*, 2006 WL 3086951, * 26 (E.D. Cal. 2006) (explaining that "[a] purposeful direction analysis is most often used in suits sounding in tort, such as fraud").  The fraud aspects of a securities case may establish purposeful direction, as in a tort case, while the transactional aspects of a securities case may establish purposeful availment.

We begin with purposeful direction.  The purposeful direction requirement is analyzed under the "effects" test of *Calder v. Jones*, 465 U.S. 783 (1984), which requires defendants to have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

Here, the SEC has established a prima facie case that Homm purposefully directed the alleged market manipulation scheme at the United States.  The FAC alleges that Homm engaged in a fraudulent scheme to manipulate the markets of U.S. microcap stocks.  (FAC ¶ 3).  According to the FAC, this fraudulent scheme involved Defendant Hunter World Markets, Inc. ("HWM"), a registered broker-dealer

---

[7] Because we conclude that the SEC has established a *prima facie* case for specific jurisdiction, we do no address the Parties' brief arguments on general jurisdiction.

*P/SEND*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1637-GHK (RZx) | Date | February 7, 2013 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Todd M. Ficeto, et al.* | | |

located in Beverly Hills, CA, which Homm and Defendant Todd M. Ficeto ("Ficeto") co-owned. "Using his position as the principal investment adviser of the Absolute [F]unds, and as a co-owner of HWM, Homm misused the assets of the Absolute [F]unds to allow him, Ficeto, Heatherington and HWM to manipulate upward the prices of a number of domestic microcap issuers whose stock was publicly traded in the United States." (FAC ¶ 4). The FAC thus alleges that Homm used the assets of foreign hedge funds to manipulate United States over-the-counter securities markets. The FAC therefore clearly alleges that Homm committed intentional acts expressly aimed at United States, and the SEC has supported these allegations with credible evidence that meets the prima facie standard.[8]

Further, market manipulation, such as artificially inflating the price of United States over-the-counter securities, constitutes "foreseeable harm" resulting from Homm's alleged conduct. As we explained in our December 20 Order, "transactions on the domestic over-the-counter market are as inherently imbued with our national interest as trades on national exchanges." (December 20 Order at 11). Thus, misleading United States over-the-counter markets with trading schemes that artificially inflate the value of securities on those markets constitutes a "foreseeable harm" in the United States, which we conclude the SEC has established under the prima facie standard. Accordingly, the SEC has carried its prima facie burden to establish that Homm purposefully directed the alleged fraud at the United States.

Next, courts have found that the transactional aspects of securities fraud establish purposeful availment. *In re LDK Solar Securities Litigation* held, for example, that the defendants "purposefully availed themselves of the forum by taking advantage of this nation's laws and its capital markets." 2008 WL 4369987 at *6; *see also Kairalla v. Advanced Medical Optics, Inc.*, 2008 WL 2879087, *15 (C.D.

---

[8] The SEC has presented extensive evidence to meet this standard. (*See* Kirka Decl. and exhibits thereto). The SEC has provided evidence that: (1) Homm co-owned HWM and was actively engaged in HWM's business, (Id. ¶¶ 7-24, 35 & Exhs. 1-19 (including, for example, hundreds of emails between Ficeto and Homm about HWM's business)); (*see also* Homm Decl. ¶ 7 (acknowledging ownership interest in HWM) [Dkt. No. 85]); (2) Homm opened accounts for the Absolute Funds at HWM, (Kirka Decl. ¶ 47 & Exh. 32); (3) Homm used his position at Absolute Funds to cause the Funds to purchase securities on the United States over-the-counter markets through HWM, (id. ¶¶ 26, 28 & Exhs. 21, 23); and (4) credible evidence of market manipulation of relevant securities, (id. ¶ 48 & Ex. 33 (HWM order tickets and confirmations from 2007 showing increase in price of a share, after the close of the market, from roughly $3.25 to roughly $12 in a matter of minutes)). The SEC has also produced additional evidence showing Homm's contacts with the United States, such as evidence that (1) Homm signed purchase agreements for purchases of stock in private placements of U.S. companies, (id. ¶¶ 29-40 & Exhs. 24-27); (2) Homm obtained control of U.S. penny stock companies, (id. ¶ 6 & Exh. 1); and (3) Homm attended meetings in New York to solicit investments in the Absolute Funds, (id. Exh. 1). At this stage, all "conflicts between the facts contained in the parties' affidavits must be resolved in [Plaintiff's] favor." *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002). Thus, we conclude that the SEC's ample evidentiary showing is insurmountable under the prima facie standard.

*P/SEND*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1637-GHK (RZx) | | Date | February 7, 2013 |
|---|---|---|---|---|
| Title | *Securities and Exchange Commission v. Todd M. Ficeto, et al.* | | | |

Cal. 2008) (holding that personal jurisdiction lies over German defendant in securities fraud case where plaintiff alleged that the defendant "trades in the United States securities markets, purposefully availing himself of the protections and privileges of the United States, and that [defendant] has conducted business with . . . executive offices in Santa Ana, California."); *see also Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1068 (9th Cir. 2000) (reversing district court that dismissed securities claims for lack of personal jurisdiction because "[a] defendant who is alleged to have knowingly traded on an American exchange on the basis of inside information has purposefully availed himself of the instrumentalities of United States commerce and can reasonably expect to be haled into an American court"). Likewise, we conclude here that the SEC has sufficiently shown that Homm purposefully availed himself of the United States over-the-counter securities market to establish personal jurisdiction under the prima facie standard.

Homm argues that no effects from the alleged fraud were felt in the United States because the "location of the damages" was elsewhere. (Mot. at 15). Thus, Homm argues, "[i]f there are no damages then there is no effect, and therefore there is no effect in the United States." (Id. at 17). As discussed above, however, purposeful direction requires "foreseeable harm" in the United States, *not* "foreseeable actual damages," as Homm appears to contend. Homm cites no authority for this narrow view of purposeful direction, and we decline to adopt it. Rather, we agree with the SEC that "injecting false information into the domestic over-the-counter market through a market manipulation scheme satisfies the requirement of 'foreseeable harm.'" (Opp. at 20-21).

Homm also argues that there was "no real market in the U.S." for the over-the-counter securities involved in this case. (Mot. at 16). But this contention is plainly inconsistent with the FAC and the SEC's evidentiary showing. (*See* FAC ¶ 21 ("The Issuers that were the subject of Defendants' manipulative scheme were a number of U.S.-domiciled microcap companies . . . whose shares were registered with the Commission during the relevant period and traded in the United States on the Over-the-Counter Bulletin Board ("OTCBB") or quoted in the Pink Sheets")). Finally, Homm argues that his interest in HWM cannot establish specific personal jurisdiction over him. (Opp. at 18). Homm cites authority for the proposition that "[m]erely owning stock in a company is insufficient to satisfy the due process requirements." (Id.) But the FAC alleges far more than mere stock ownership in an American company. As discussed above, the FAC alleges (and the SEC has provided credible evidence) that Homm used the Absolute Funds' assets to manipulate over-the-counter securities markets and that HWM, an American entity based in Beverly Hills that Homm co-owned, executed manipulative trades with his knowledge and consent. (FAC ¶¶ 3, 4, 10). Accordingly, cases that hold that mere stock ownership is insufficient to establish personal jurisdiction are irrelevant here. *See Howard v. Everex Systems, Inc.*, 228 F.3d 1057, 1069 (9th Cir. 2000) (rejecting similar argument in insider trading case by reasoning that "defendants' argument that all shareholders in a public company would be subjected to jurisdiction . . . is simply wrong" because "only stockholders who traded on the basis of material, non-public information would have the necessary contacts for personal jurisdiction"); *see also San Mateo County Transit Dist. v. Dearman, Fitzgerald, & Roberts, Inc.*, 979 F.2d 1356, 1358 (9th Cir. 1992) (holding that personal jurisdiction exists in a case arising under the Securities and Exchange Act so long as "the plaintiff makes a non-frivolous allegation that the defendant controlled a person liable for fraud").

*P/SEND*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1637-GHK (RZx) | Date | February 7, 2013 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Todd M. Ficeto, et al.* | | |

  Finally, the SEC's claims obviously arise out of or relate to Homm's alleged manipulation of United States over-the-counter securities markets. In light of the foregoing, we conclude that the SEC has met the prima facie standard to show minimum contacts with the United States to support personal jurisdiction over Homm.

    **2.**  **Whether Exercise of Personal Jurisdiction is Reasonable**

  "Once it has been decided that a defendant purposefully established minimum contacts with a forum, he must present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable in order to defeat personal jurisdiction." *Dole Food*, 303 F.3d at 1114 (emphasis added) (internal quotation marks omitted) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985)). Here, Homm has failed to present a sufficiently compelling case that the exercise of personal jurisdiction would be unreasonable. Homm argues that because he is a foreign citizen living outside the United States, litigating here will be inconvenient for him. But Homm's inconvenience is insufficient to "overcome the strong presumption of reasonableness of the assertion of personal jurisdiction" because this factor will always favor the non-forum defendant. *Id.* at 1117; *see also Panavision*, 141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'"). Further, Homm acknowledges that there is no alternative forum for this action, (Mot. at 21), and hence there is no forum more convenient for Homm in which this action could proceed. Homm also argues that if forced to litigate here, "Homm will find it almost impossible to defend himself because . . . exculpatory evidence is beyond the subpoena power of this Court." (Id. at 20). In particular, Homm appears concerned that he will not be able to obtain the Absolute Funds' records because they are foreign entities who are not a party to this action. But, as the SEC points out, Homm "has the power to conduct discovery on third parties, both under Fed. R. Civ. P. 45, as well [as under] the Hague Convention." (Opp. at 25).[9] Accordingly, any discovery difficulties in this matter appear typical for an action in which foreign entities possess relevant evidence, and Homm has failed to present a compelling case to the contrary.

  Thus, in light of the foregoing, we conclude that the SEC has made a prima facie showing of specific personal jurisdiction over Homm.

  **C.**  **The SEC has adequately stated its § 10(b) market manipulation claims against Homm**

  Homm argues that the SEC's claims fail to meet the heightened pleading requirements of FRCP 9(b). (Mot. at 23). The SEC responds that we have already decided this issue in our December 20 Order.

---

  [9] We also note that the U.K., including the Cayman Islands where the Absolute Funds were allegedly domiciled, is a party to the Hague Evidence convention. *See* Hague Evidence Convention – Acceptances of Accessions, <http://www.hcch.net/upload/overview20e.pdf>; *see also* Acceptances of accessions, <http://www.hcch.net/index_en.php?act=status.accept&mid=485>.

*P/SEND*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1637-GHK (RZx) | Date | February 7, 2013 |
|---|---|---|---|
| Title | *Securities and Exchange Commission v. Todd M. Ficeto, et al.* | | |

(Opp. at 10 n.4). We agree with the SEC. We rejected a nearly identical FRCP 9(b) argument in our December 20 Order, where we explained that the FAC "provides detailed information regarding each Defendant, his (or its) role in the fraudulent transactions, the specific fraudulent acts that were allegedly performed, and how the acts constitute fraud." (December 20 Order at 6). We adopt this reasoning here, as Homm's recycled FRCP 9(b) arguments do not warrant a contrary conclusion.

Homm also argues that the SEC has failed to state a § 10(b) market manipulation claim because "all of the facts of the alleged manipulative trading were fully disclosed to the market to the extent required by law." (Mot. at 24-25). This factual argument, which would require us to assess evidence outside the FAC, cannot be resolved on a motion to dismiss. We cannot simply take Homm's word that "all of the facts of the alleged manipulative trading were fully disclosed" to dismiss the FAC, especially because the SEC appears to contest this assertion. (Opp. at 10 n.4 ("Homm's claim that he made full disclosure to ACMH is highly dubious in light of the fact that he has been sued for fraud by his former employer.")). Moreover, the SEC has adequately alleged matched orders, marking the close transactions, and wash trades, which are quintessential forms of market manipulation, *see Desai v. Deutsche Bank Securities Ltd.*, 573 F.3d 931 (9th Cir. 2009) (explaining that manipulation "refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity"), unlike the "support bidding" practices alleged in the case Homm cites, *Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 132 (2d. Cir. 2011). Support bidding is a practice where a securities dealer places bids to prevent failed auctions. *Id.* In *Wilson*, the court found that "there can be no dispute that the general phenomenon of [auction rate securities ("ARS")] dealers placing bids to prevent failed auctions (i.e., 'support bidding') was publicly disclosed by the time that [plaintiff] purchased his ARS in July 2007." *Id.* Here, the FAC does not reveal any basis for a similar conclusion that the allegedly manipulative trades in this action, such as wash sales on the United States over-the-counter securities markets, were a "general phenomenon" or that such phenomenon was "publicly disclosed," either by Defendants or someone else.

Accordingly, as we concluded in our December 20 Order, the SEC has adequately alleged its market manipulation claims.

**III.    Conclusion**

In light of the foregoing, Homm's Motion is **DENIED** in its entirety. Homm's Motion to Stay Case is **DENIED** as moot. [Dkt. No. 75]. Because the jurisdictional facts are intertwined with the merits, we decline, in our discretion, to hold an evidentiary hearing. *See Brooks v. Motsenbocker Advanced Developments, Inc.*, 242 Fed. App'x 889, 890 (4th Cir. 2007) ("Where the jurisdictional facts are disputed, however, the court may either resolve the issue in a separate evidentiary hearing or defer ruling pending receipt at trial of evidence relevant to jurisdiction."). Homm **SHALL** answer the FAC **within fourteen (14) days hereof**. Fed. R. Civ. P. 12(a)(4)(A).

**IT IS SO ORDERED.**

*P/SEND*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-1637-GHK (RZx) | Date | February 7, 2013 |
|----------|----------------------|------|------------------|
| Title | *Securities and Exchange Commission v. Todd M. Ficeto, et al.* | | |

: 

Initials of Deputy Clerk    IR for  Bea